UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LEA DANIELLE PULLIAM,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:15-CV-329-PRC<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lea Danielle Pulliam on August 31, 2015, and Plaintiff's Brief [DE 16], filed by Plaintiff on March 10, 2016. Plaintiff requests that the April 21, 2014 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On May 26, 2016, the Commissioner filed a response, and Plaintiff filed a reply on June 9, 2016. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits and supplemental security income on October 15, 2012, alleging disability since January 1, 2011. The claims were denied initially and on reconsideration. Plaintiff filed a written request for hearing, and on February 11, 2014, Administrative Law Judge Mario G. Silva ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. On April 21, 2014, the ALJ issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.

3. The claimant has the following severe impairments: systemic lupus erythematosus (SLE), discoid lupus erythematosus, Raynaud's syndrome, peripheral artery disease, and contracture of the right index and middle fingers.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally and lighter objects frequently, stand and/or walk for about 6 hours of an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. The claimant should never climb ladders, ropes, and scaffolds and never crawl, but she can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant is limited [to] occasional overhead reaching with her right dominant upper extremity. The claimant is limited to frequent handling with her left upper extremity and occasional handling with her right upper extremity. The claimant is limited to frequent fingering with her left upper extremity and occasional fingering with her right upper extremity. The claimant has a clawed feature of the right dominant extremity involving the right index and middle fingers and is unable to fully extend these fingers. The claimant should avoid all exposure to extreme cold and even moderate exposure to wetness and humidity.

6. The claimant has no past relevant work.

7. The claimant was born [in 1969] and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision.

(AR 16-22).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be

based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff has a history of systemic lupus erythematosus (SLE), discoid lupus erythematosus, and Raynaud's syndrome. Plaintiff's primary physical limitation related to her lupus and Raynaud's syndrome is difficulty with her right index and middle fingers. In this appeal, Plaintiff seeks reversal with an award of benefits or, in the alternative, with remand for a new hearing. Plaintiff argues that reversal is warranted because the ALJ erred in formulating Plaintiff's residual functional capacity, in assessing Plaintiff's credibility, and in relying upon the vocational expert testimony. The Court considers each argument in turn.

**A. Residual Functional Capacity**

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a); 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence

of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff makes two arguments regarding the RFC determination.

1.   *Opinion of Consultative Examiner Dr. Smejkal*

First, Plaintiff argues that the ALJ erred in his interpretation of the opinion of Dr. Smejkal, the consultative examiner.

On November 21, 2012, Plaintiff underwent a consultative examination with J. Smejkal, M.D. Plaintiff presented with complaints of lupus, kidney/nephritis, pericardial effusion, PAD, Raynaud's syndrome, being easily fatigued, headaches, low blood pressure, anemia, and pain in the joints, wrists, and ankles. (AR 458). In relevant part, Plaintiff reported that lupus causes tingling and numbness in her hands and that her finger tips turn blue occasionally. She further reported numbness and tingling in her right hand and that she could not flex her right index finger for about a week. Dr. Smejkal noted swelling in the right hand during the examination.

On physical examination of the upper extremities, Dr. Smejkal noted no anatomical deformities and no stiffness, effusion, amputation, atrophy, or ulcers but did note that Plaintiff had mild swelling in the right hand. He further noted skin discoloration to the right hand finger tips and

7

poor circulation. He found no increased skin warmth and full range of motion in the upper extremities. He found strength of 5/5 in all upper major muscle groups. He found no erythema or warmth but again noted mild swelling in the right hand. On dynamometer testing, Plaintiff generated six kilograms of force with the right hand and fifteen kilograms of force with the left hand. (AR 460-61).

> On neurological exam, Dr. Smejkal noted, in relevant part:
>
> Normal grip strength at 5/5 on left with good fine finger manipulative abilities, including the ability to button, zip, and pick up coins *but abnormal on right at 3/5 with fine finger manipulative abilities, including the ability to button, zip, and pick up coins on good days but other days she is unable to use her right hand*.

(AR 461) (emphasis added).

In his decision, the ALJ discussed Dr. Smejkal's November 21, 2012 consultative examination, including the largely normal physical findings. The ALJ noted Dr. Smejkal's observation of mild swelling in Plaintiff's right hand, discoloration to the right hand fingertips, and poor circulation. (AR 19). The ALJ then summarized the grip strength findings, noting Dr. Smejkal's normal findings for the left hand but that he found that Plaintiff had reduced grip strength in the right hand. *Id*. The ALJ then wrote, "Apparently based on the claimant's reports, Dr. Smejkal noted that the claimant had fine finger manipulative abilities with her right hand on good days, but was unable to use her right hand on bad days." *Id*.

Plaintiff argues that the ALJ improperly dismissed Dr. Smejkal's statement made under the heading for neurological examination findings that Plaintiff would have "days she is unable to use her right hand," (AR 461), without explaining why he dismissed this finding and without evidentiary support for that conclusion. Plaintiff argues that Dr. Smejkal's statement that there are days Plaintiff

8

is unable to use her right hand was included in the examination findings portion of the report, suggesting that the statement is a medical finding based on his observations, and that it was not made under the narrative "history," which is taken from the patient's own reports. Thus, Plaintiff argues that, based on the location of the statement in Dr. Smejkal's report, it is reasonable to conclude that the statement was his medical opinion and should have been weighed as such.

Indeed, it appears that the ALJ did not consider Dr. Smejkal to have made a medical finding regarding Plaintiff's inability to use her right hand on bad days but rather that Dr. Smejkal based the statement on Plaintiff's subjective complaints. This assumption was error. Dr. Smejkal observed swelling in Plaintiff's right hand, the skin discoloration in her right hand, and poor circulation. He also observed that she could only generate six kilograms of force with her right hand. These findings could support a medical conclusion that Plaintiff would have days that she could not use her right hand. Plaintiff is correct that the statement was made under the examination findings and not in the portion detailing Plaintiff's subjective history. Although the ALJ's assumption that Dr. Smejkal's statement that Plaintiff could not use her right hand on bad days was based on Plaintiff's own subjective reports is a possible explanation, so is the alternate conclusion that the statement was Dr. Smejkal's medical opinion based on his observations.

Notably, Plaintiff testified at the hearing that she is in pain in relation to her hands two to three days a week and that she would not be able to work on those days: "Oh definitely, I would call off on those days." (AR 37). She then testified that, in a seven-day week, she has three good days with the remainder fair or poor, with it varying from day to day. (AR 38). As discussed in the "credibility" section below, it appears that the ALJ discredited this testimony and her allegation of bad days when she cannot use her right hand; however, the ALJ did not explain why he discredited

9

this testimony. Dr. Smejkal's statement regarding her inability to use her right hand on some days, if given as a medical finding, is consistent with Plaintiff's testimony.

Also, the medical records overall demonstrate periods of worsening symptoms. In August 2011, Dr. Reich noted that Plaintiff had suffered from a recent flare up of SLE, and Plaintiff reported that she felt she was having worsening symptoms. (AR 406). On October 6, 2011, Plaintiff reported pain and swelling, especially in her third right finger, which was changing color to a bluish purple. (AR 399). That was the month she was hospitalized. (AR 392). She had some improvements once she was released. In September 2012, Plaintiff reported increased pain in her right index finger, noticeably cooler right hand, and pain lifting objects with her fingers involved. In December 2012, Plaintiff reported increased pain and stiffness in her right hand and index finger for about two to three weeks. (AR 548, 552). She reported feeling better with less inflammation in March 2013. (AR 546). Yet, two months later, Plaintiff had a severe flare up of ischemia. (AR 486-99, 509-13). Thus, during two periods of time, in October 2011, and in May-June 2013, Plaintiff had extreme blood loss to her hand that almost necessitated amputation.

Plaintiff also notes that the two types of Lupus she suffers, as recognized by the ALJ, are characterized by fluctuations in symptoms. And, the evidence of record supports such fluctuations in Plaintiff's life, causing good and bad days. The ALJ did not assess whether Plaintiff had good and bad days. The RFC must include Plaintiff's limitations on her worst days. *See Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704 (7th Cir. 2011).

A medical finding by Dr. Smejkal that Plaintiff would not be able to use her right hand for fine manipulation on her bad days, combined with Plaintiff's testimony that she suffered from two to three bad days a week in which her hand pain would make her incapable of working would have led to the conclusion that Plaintiff was disabled, based upon the vocational expert's testimony that,

if Plaintiff could not use her right had at all, even two days each week, she could not sustain any job. *See* (AR 52). Thus, the Court cannot say that substantial evidence supports the ALJ's RFC finding. Remand is necessary to clarify, through medical opinion, whether Plaintiff will suffer from bad days such that she will be unable to use her hands (or her right hand) on those days and, if appropriate, to seek clarification of Dr. Smejkal's findings. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

The Commissioner is correct that the ALJ reviewed all of the evidence, including the records that Plaintiff was improving in January 2014. As noted by the ALJ, on January 24, 2014, Plaintiff rated her pain to her physician as 2 out of 10 on a scale of 1 to 10. (AR 603). Plaintiff also reported having a difficult time in the cold and using lorezapam or Tylenol three to four times a week for pain. The doctor noted that her severe SLE and Raynaud's syndrome, with previous episodes of ischemia have led to chronic changes in her finger. Upon a review of her systems, all systems were normal except for musculoskeletal, for which the doctor noted "joint stiffness, but no diffuse joint pain and no joint swelling." (AR 603). The doctor's physical exam of Plaintiff was normal except that under lymphatic, he noted "obesity;" under musculoskeletal–inspection/palpation of joints, bones, and muscles, he noted "slightly abnormal Pap but overall improved;" and under skin–skin and subcutaneous tissue, he noted "some hyperpigmentation." (AR 605). Notably, under musculoskeletal, he noted normal for the categories of gait and station, digits and nails, and muscle strength/tone. *Id.* Nevertheless, this treatment record is not inconsistent with a finding that Plaintiff has bad days when she is unable to use her right hand and that her symptoms fluctuate. Notably, the "discussion/summary" conclusion of the report includes the statement, "Plan to recheck sle labs, watch for complications." (AR 608). And, the ALJ did specifically cite this treatment record to discredit Plaintiff.

11

The Commissioner also notes that the ALJ found in his decision that "the record does not contain any opinions from treating or examining physician[s] indicating that the claimant is disabled or even that her limitations are greater than those determined by this decision." (AR 20). However, as noted above, it appears that Dr. Smejkal made a medical finding based on his physical examination of Plaintiff that she has bad days when she cannot use her right hand. Also, there is no evidence that any of her treating physicians were asked to opine on Plaintiff's ability to work. Although Plaintiff bears the burden of proving the severity of her impairments, it is the ALJ's responsibility to seek more information if the evidence offered is unclear. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a); 20 C.F.R. §§ 404.1527, 416.927; SSR 96-2p; *see also Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

2.  *Explanation of the RFC Determination*

Plaintiff also makes several arguments to support her contention that the ALJ's RFC assessment was not supported by substantial evidence because he failed to explain how the evidence lead to his conclusion and did not incorporate all of Plaintiff's impairments, without explanation.

First, Plaintiff argues that, although the ALJ discussed the medical evidence, he failed to explain how the evidence lead to his conclusions. As noted by the Commissioner, the ALJ carefully discussed the medical evidence, specifically noting Plaintiff's periods of worsening and improving symptoms. The ALJ also explained how he accommodated each of Plaintiff's symptoms in the RFC. *See* (AR 20). The ALJ's decision is not generally deficient in this regard.

Next, Plaintiff argues that the ALJ created an evidentiary deficit in which he had no medical opinion nor Plaintiff's reports on which to base his RFC assessment. Plaintiff asserts that the ALJ rejected the opinions of Dr. Whitley and Dr. Brill, the non-examining state agency consultants, who

found Plaintiff could do a full range of light work, which includes lifting up to 20 pounds, by finding Plaintiff more limited by limiting her to lifting 10 pounds based on her subjective complaints. However, she argues that the ALJ did not fully credit her symptoms but did not explain which symptoms he did credit and why. And, she notes that the ALJ did not consider Dr. Smejkal's statement about Plaintiff being unable to use her right hand some days as a medical opinion. Thus, Plaintiff argues that there was an evidentiary deficit.

The Court disagrees that this is an evidentiary deficit or that the ALJ made an independent medical determination. The ALJ did not reject the opinions of Dr. Whitley and Dr. Brill. He adopted them almost in their entirety with the exception of Plaintiff's lifting requirement of 10 pounds, which the ALJ noted was based on her testimony that she was limited to lifting 10 pounds, and some postural limitations. *See* (AR 19). The Plaintiff incorrectly states in her opening brief that the ALJ found that the state agency consultants' opinion that Plaintiff could occasionally finger with her right upper extremity was not restrictive enough and that Plaintiff's subjective reports supported greater restrictions. *See* (ECF 16, p. 13 (citing AR 20)). The ALJ made no such analysis; rather, the ALJ included the same restriction to occasional fingering with the right upper extremity in the RFC, consistent with the state agency consultants' opinions. *See* (AR 59, 67, 78). The ALJ considered and weighed all of the relevant evidence to formulate Plaintiff's RFC, which is a legal decision, rather than a medical one. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); 20 C.F.R. §§ 404.1545(e)(2), 416.927(e)(2). The ALJ did not simply adopt a "middle ground" as argued by Plaintiff.

Next, Plaintiff argues that she consistently reported feeling tired and fatigued, *see* (AR 355, 362, 378, 399, 552), and that fatigue is a common symptom of lupus. In his decision, the ALJ stated that he was accommodating Plaintiff's fatigue from SLE by limiting her to lifting and carrying only

13

10 pounds occasionally and only occasional postural activities. Plaintiff faults the ALJ for not explaining what evidence supports that Plaintiff's fatigue would permit work with the limitations, arguing that his RFC was not supported by any medical evidence "and appears to have been plucked out of thin air by the ALJ." (ECF 16, p. 14). The Commissioner offers no response to this argument. On remand the ALJ will have an opportunity to articulate how these limitations accommodate her fatigue.

Next, Plaintiff argues that the ALJ made a factual error when he stated that Plaintiff's reported joint pain in her knees, ankles, elbows, and wrists was not documented in the medical record in treatment notes. *See* (AR 16). In support, Plaintiff notes that on numerous occasions, the record shows that Plaintiff suffered from "joint swelling," stiffness, and pain. (ECF 16, p. 14 (citing (AR 355, 371, 378, 385, 392, 399, 406, 532, 540, 552, 603)). However, a careful review of the records that begin on each of those pages shows that the joint swelling, stiffness, or pain referenced was only in relation to her right hand. On each form, under the heading "Review of Systems" and under the subheading "musculoskeletal," the terms "joint swelling," "joint stiffness," or "joint pain" are listed with no further detail. *See, e.g.,* (AR 355, 392, 532, 603). Then, under the heading "Physical Exam" and under the subheading "musculoskeletal," the doctor provides further information, and, in each instance, the details of the examination relate to Plaintiff's right hand. *See, e.g.* (AR 357, 394, 534, 605). Nowhere does the doctor discuss joint pain, joint swelling, or stiffness in any other joints. Also, in the sections titled "chief complaint" and "history of present illness," both of which are presumably based on Plaintiff's subjective reports, none of the records cited by Plaintiff contain any complaint by Plaintiff herself of joint pain, stiffness, or swelling in any joints other than her right hand. Therefore, the ALJ's statement regarding the lack of documentation of

joint pain in her knees, wrists, ankles, and elbows is correct, and Plaintiff's argument is not well taken.

Finally, Plaintiff argues that the ALJ did not consider her impairments in combination. *See Parker*, 597 F.3d at 923 ("The judge's failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error."). In support, Plaintiff notes her joint pain and fatigue, which the Court just discussed, as well as nephritis, pericardial effusion, headaches, low blood pressure, anemia, a urethral cyst, and menorrhagia, all of which the ALJ found to be non-severe. (ECF 16, p. 16). With the exception of the fatigue, which the Court has discussed, Plaintiff offers no argument why the other non-severe impairments would further limit her ability to work. The ALJ thoroughly discussed each at step two of the sequential analysis, and the Plaintiff offers no argument regarding that analysis. Therefore, the ALJ did not err in his consideration of Plaintiff's non-severe impairments in formulating the RFC.

### B. Credibility Determination

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's January 17, 2014 decision is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding

of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In his decision, the ALJ summarized Plaintiff's statements regarding her symptoms as follows:

> In her initial disability report, the claimant alleged that she is unable to work due to lupus, nephritis, pericardial effusion, peripheral artery disease, Raynaud's syndrome, fatigue, joint pain in her knees, wrists, and ankles, headaches, low blood pressure, and anemia. The claimant alleged that her right index finger is unusable. She alleged that she needs assistance with daily dressing, hygiene, and cooking because of pain. The claimant alleged that her fingers turn blue when it is below 40 degrees and they throb/ache in extreme temperatures. The claimant alleged that she cannot straighten her right index finger at all and cannot pick up anything with it. The claimant alleged

> that her medications make her queasy and she gets light-headed when standing too fast. The claimant alleged that her constant skin issues and problems are embarrassing and painful.
>
> At the hearing, the claimant testified that her right fingers do not extend as they should. The claimant testified that she works as a substitute teacher 2 or 3 days a week and can decline work at will. The claimant testified that cold weather causes pain and her fingers turn blue on both hands. The claimant testified that she has hand pain 2 or 3 days a week. The claimant testified that she has good days and bad days with an average of three good days a week and the remainder of the days would be fair to bad. The claimant testified that she has been instructed not to lift over ten pounds, can stand 30 to 40 minutes on a bad day, can reach out in front but arms tingling when she reaches overhead, and can stand/walk 4 hours during an 8-hour workday on a bad day.

(AR 18-19). The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable impairments "are not entirely credible for the reasons explained in this decision." (AR 19).

Plaintiff argues that this statement implies that the ALJ found some of Plaintiff's statements credible and others not credible without indicating which statements he credits, rendering judicial review impossible. From a reading of the decision as a whole and in light of the RFC, it appears that the ALJ discredited Plaintiff's allegations regarding the effects of joint pain on her daily activities, having "good days and bad days" in relation to her right hand, and how long she can stand on a bad day. But, it is unclear why the ALJ discredited those statements as the ALJ did not give specific reasons for discrediting these statements or for discrediting Plaintiff overall. On remand, the ALJ will have an opportunity to assess Plaintiff's subjective symptoms under SSR 16-3p.

### C. Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ erred by relying upon the vocational expert's testimony, arguing that it was inconsistent with the Dictionary of Occupational Titles. Although this case is

being remanded for the RFC determination, the Court nevertheless addresses this issue in the event the ALJ finds the same RFC.

Having been posed a hypothetical that mirrored the ALJ's ultimate RFC determination, the vocational expert testified that the hypothetical individual was capable of performing work as an usher, a counter clerk, and a bakery worker, conveyor line. The ALJ accepted that testimony to find that Plaintiff was not disabled. (AR 21-22). Plaintiff argues that this was error because the vocational expert testified that those jobs are "light," which requires lifting up to 20 pounds, and the ALJ limited Plaintiff to lifting 10 pounds.

However, Plaintiff fails to acknowledge that the ALJ specifically questioned the vocational expert about the lifting restrictions for those jobs, and the vocational expert testified that the jobs of usher, counter clerk, and bakery worker on a conveyor line do not involve lifting more than 10 pounds occasionally. (AR 48). The ALJ specifically verified that requirement. *Id*. And, when the ALJ asked the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles, the vocational expert testified that it was. (AR 49). The ALJ noted each of these facts in his decision. (AR 21-22). The ALJ did not err in relying on the vocational expert testimony in relation to the lifting requirements.

Plaintiff also argues that the ALJ erred because the vocational expert testified that the usher positions routinely work 30 hours a week, which does not equate with a full time position, which is 40 hours a week under the regulations. On remand, the ALJ will have an opportunity to clarify the number of full-time usher jobs available, if appropriate.

### D. Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved

in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required for the ALJ to properly consider Plaintiff's RFC.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** the case for further proceedings.

So ORDERED this 21st day of March, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT